E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2686
    Facsimile:  (213) 894-0142
    E-mail: James.Dochterman@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>$215,566.31 SEIZED FROM ONE BANK OF AMERICA ACCOUNT,<br><br>    Defendant. | Case No. 8:24-CV-00373<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. §§ 981(a)(1)(C) and 984<br><br>[USSS] |

Plaintiff United States of America ("the government") brings this claim against the defendant funds described more specifically below, and alleges as follows:

## JURISDICTION AND VENUE

1. The government brings this *in rem* forfeiture action pursuant to 18 U.S.C. §§ 981 (a)(1)(C) and 984.

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff is the United States of America.

5. The defendant is $215,566.31 Seized From One Bank Of America Account (the "defendant funds"), which funds were seized at Bank of America, 1418 North Main Street, Santa Ana, California 92701 on March 9, 2023, pursuant to a federal seizure warrant from a Bank of America Account with the last four digits ending in 9328 (the "BoA 9328 Account") for which Victory Sky, Inc., a California general stock corporation, is the account holder and signatory. The signature card for the BoA 9328 Account also lists Jiang Rong P. Chen ("Chen") as Victory Sky, Inc.'s CEO and an authorized signatory.

6. The defendant funds are in the custody of the U.S. Secret Service in this District, where they shall remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Victory Sky, Inc., Chen, the U.S Department of Treasury, the City of Irvine, or the Orange County United Way which administered the funds paid under the Emergency Rental Assistance Program (discussed in detail below), may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

**Background Regarding The Emergency Rental Assistance Program**

8. The Emergency Rental Assistance program ("ERAP") made funding available to assist households that were unable to pay rent or utilities, and consisted of

two separate programs: "ERA1" for which the U.S. Congress authorized up to $25 billion under the Consolidated Appropriations Act, 2021, enacted on December 27, 2020; and "ERA2" for which the U.S. Congress authorized up to $21.55 billion under the American Rescue Plan Act of 2021, enacted on March 11, 2021.  The Department of Treasury's Office of Recovery Programs implemented the ERA.

9. Grantees under ERA1 or ERA2 could use the funds to provide assistance to eligible households through existing or newly created rental assistance programs.  The U.S. government made program payments under ERA1 and ERA2 through the U.S. Treasury directly to states, the District of Columbia, U.S. territories, local governments with more than 200,000 residents, the Department of Hawaiian Home Lands, and Indian tribes or the tribally designated housing entity of an Indian tribe, as applicable (collectively the "eligible grantees").  Funds that the U.S. government made available through ERA1 and ERA 2 were not paid directly to households or landlords, but rather to the administrative agencies designated to manage the programs, who in turn, and depending on the eligible grantee's implementation, would pay the funds directly to renters to help cover their housing-related costs or to landlords to help cover their tenant's unpaid rent during the pandemic.

10. Under ERAP, at least ninety percent of awarded funds must be used for direct financial assistance related to tenant housing costs, including rent, rental arrears, utilities and home energy expenses.  The remaining funds can lawfully be used for housing stability services, including case management and other services intended to keep households stably housed.  The availability of ERA1 funds expired on September 30, 2022, while the availability of ERA2 funds will expire on September 30, 2025.

11. ERA2 set aside monies for eligible grantees with a high need for ERA2 assistance, based on the number of very low-income renter households paying more than 50 percent of their income on rent or living in substandard or overcrowded conditions, rental market costs, and a change in employment after February 2020.

//

**Victory Sky, Inc. Submits Fraudulent Applications For And Receives ERAP Funds**

12. In the course of their investigation, Department of Treasury, Office of Inspector General investigators learned that, during March 2021, Chen submitted twenty-seven fraudulent ERAP applications on Victory Sky, Inc.'s behalf, whereby the company sought over $905,000.00 in ERAP funds. The March 2021 applications were submitted to the Orange County United Way ("OCUW"), which the City of Irvine had appointed to administer the City's allocation of ERAP funds that the OCUW received directly from the Department of Treasury.

13. The OCUW funded nine of the Victory Sky, Inc. applications, which sought ERAP benefits relative to nine Irvine, California residences, and resulted in the OCUW's depositing via wire some $227,440.00 of ERAP funds into Victory Sky Inc.'s BoA 9328 Account, including the $215,566.31 (*i.e.*, the defendant funds) seized from the account, as more fully described below.

14. The investigation revealed that each of the twenty-seven ERAP applications Chen submitted on Victory Sky, Inc.'s behalf contained material false representations. Each application alleged that Victory Sky, Inc. was the landlord relative to the residences, yet the actual landlords, owners and tenants relative to the properties all stated during interviews that Victory Sky, Inc. had no role whatsoever relative to the property. In addition, while all the applications identified by name the purported tenants residing on the property who needed financial assistance and therefore would be covered by the ERAP funds, the landlords, owners and tenants relative to the properties all stated the persons identified in the applications did not reside on the property and they had never even heard of those individuals.

**Chen Submitted a Fraudulent ERAP Application for Residence #1 in Irvine, California**

15. On or about March 15, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Yuntang Chen" and allegedly living at a residence in Irvine, California

("Residence #1")[1]. The OCUW approved the Residence #1 application on or about May 6, 2021, and deposited $19,200.00 in ERAP funds to the BoA 9328 Account on or about June 15, 2021.

16. On or about April 25, 2022, investigators visited Residence #1, and later that same day received an email from one of the tenants, E.B.[2] E.B. told investigators that the Residence #1 occupants included himself, and four members of his family. E.B. further stated that the purported tenant "Yuntang Chen," did not reside at Residence #1, and he was unfamiliar with Victory Sky, Inc. In addition, E.B. told investigators that H.Y. was the property manager for Residence #1.

17. Investigators spoke with H.Y. by telephone and learned that H.Y. managed Residence #1 on behalf of its true owner, X.P. H.Y. told investigators that before the current tenants resided at Residence #1, he (H.Y.) himself had lived at the home for approximately two years. Moreover, H.Y. stated that the purported tenant "Yuntang Chen" had never resided at Residence #1, and that he (H.Y.) was unfamiliar with Victory Sky, Inc.

**Chen Submitted a Fraudulent ERAP Application for Residence #2 in Irvine, California**

18. On or about March 15, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Xianqing Huang" and allegedly living at a residence in Irvine, California ("Residence #2"). The OCUW approved the Residence #2 application on or about May 17, 2021, and deposited $24,960.00 in ERAP funds to the BoA 9328 Account on or about May 17, 2021.

---

[1] Pursuant to Local Rule 5.2-1, only the city and state of personal residences are set forth in this Complaint.

[2] This complaint identifies certain individuals, whose actual names and residence addresses Victory Sky, Inc. used in connection with the fraudulent applications, by their initials only to protect their privacy.

5

19. On or about April 26, 2022, investigators visited Residence #2 following a telephone conversation with the daughter-in-law of the property's true owner, J.K. At the residence investigators spoke with resident K.K., who told investigators that he and his wife had lived at Residence #2 for three years with permission from his father (the true property owner, J.K.). Resident K.K. stated that Residence #2 has never been rented, that the purported tenant "Xianqing Huang" has never lived at Residence #2, and that he had never heard of Victory Sky.

**Chen Submitted a Fraudulent ERAP Application for Residence #3 in Irvine, California**

20. On or about March 17, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Yumei Huang" and allegedly living at a residence in Irvine, California ("Residence #3"). The OCUW approved the application on or about May 26, 2021, and deposited $23,040.00 in ERAP funds to the BoA 9328 Account on or about June 2, 2021.

21. On or about April 26, 2022, investigators visited Residence #3, and spoke with two next-door neighbors who stated that Residence #3 was a rental property. The neighbors stated they knew the property owner to be O.T.

22. O.T. and his property manager subsequently spoke with investigators and confirmed that O.T. owns approximately twenty properties, all of which are managed by his property manager. O.T. and the property manager stated that the purported tenant "Yumei Huang" had never resided at any of their properties, including Residence #3, and that they had never employed any other outside property management company and had never heard of Victory Sky, Inc.

//
//
//
//

**Chen Submitted a Fraudulent ERAP Application for Residence #4 in Irvine, California**

23. On or about March 18, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Yongtong Zhu" and allegedly living at a residence in Irvine, California ("Residence #4"). The OCUW approved the ERAP application on or about April 20, 2021, and deposited $25,760.00 in ERAP funds to the BoA 9328 Account on or about June 8, 2021.

24. On April 25, 2022, investigators visited Residence #4 and spoke with the owner, D.F. who resided at the home with his family. D.F. stated he had owned the property since early 2020 and never rented the residence out to anyone. D.F. affirmed that "Yongtong Zhu" never lived at Residence #4 and he had never heard of Victory Sky, Inc.

**Chen Submitted a Fraudulent ERAP Application for Residence #5 in Irvine, California**

25. On or about March 18, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Kathy Tse" and allegedly living at a residence in Irvine, California ("Residence #5"). The OCUW, approved the Residence #5 application on or about May 5, 2021, and deposited $28,480.00 in ERAP funds to the BoA 9328 Account on or about June 15, 2021.

26. On or about April 28, 2022, investigators spoke with R.N., a tenant of Residence #5, where her family had lived for approximately two years. R.N. stated that the purported tenant "Kathy Tse" never lived at Residence #5 in the past two years, was unfamiliar with Victory Sky, Inc., and that the property is actually managed by a company named OC Rentals.

//
//

**Chen Submitted a Fraudulent ERAP Application for Residence #6 in Irvine, California**

27. On or about March 19, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Eva Taco" and allegedly living at a residence in Irvine, California ("Residence #6"). The OCUW approved the Residence #6 application on or about May 5, 2021, and deposited $19,200.00 in ERAP funds to the BoA 9328 Account on or about June 15, 2021.

28. On or about April 25, 2022, investigators visited Residence #6 and spoke with the resident, H.Y.C., who told investigators that she resided at Residence #6 for approximately four weeks, and affirmed that the true property owner was W.Y.C. H.Y.C. stated that before she resided at Residence #6, the property was unoccupied.

29. Investigators then spoke by telephone with B.K., who stated that he is W.Y.C.'s Financial Advisor and manages rental properties on W.Y.C.'s behalf. B.K. confirmed that H.Y.C. had resided at Residence #6 for approximately four weeks, and that the residence was unoccupied for an extended period of time prior to her occupancy. B.K. told investigators that Residence #6 had never been managed by Victory Sky, Inc. and that "Eva Taco" was never a resident.

**Chen Submitted a Fraudulent ERAP Application for Residence #7 in Irvine, California**

30. On or about March 19, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Alice Chow" and allegedly living at a residence in Irvine, California ("Residence #7"). The OCUW approved the Residence #7 application on or about May 5, 2021, and deposited $32,480.00 in ERAP funds to the BoA 9328 Account on or about June 15, 2021.

31. On or about April 25, 2022, investigators visited Residence #7. Later that same day investigators received a phone call from the residence owner, K.H., who told

investigators that Residence #7 had been owner-occupied since 2008. K.H. never rented the property out and had never heard of the purported tenant "Alice Chow," or Victory Sky, Inc.

**Chen Submitted a Fraudulent ERAP Application for Residence #8 in Irvine, California**

32. On or about on March 16, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Yongcheng Chen" and allegedly living at a residence in Irvine, California ("Residence #8"). The OCUW approved the application on or about May 6, 2021, and deposited $19,600.00 in ERAP funds to the BoA 9328 Account on or about June 22, 2021.

33. On or about December 13, 2022, investigators spoke by phone with the owner of Residence #8, C.C.L., who told investigators that he owns Residence #8 and had rented the residence to the same tenant for the past twelve years. C.C.L. affirmed that "Yongcheng Chen" had never lived at Residence #8, and he had never heard of Victory Sky, Inc. C.C.L. also stated that he did not know the purported landlord listed on the application, "Leong Si."

34. On or about December 13, 2022, Irvine Police Department Detectives visited the Residence #8 residence and spoke with the true tenant, C.B., who confirmed that she rents from C.C.L., lives at the residence alone, and has lived there for twelve years. C.B. further stated that she had never applied for ERAP funds, and did not know "Yongcheng Chen," "Leong Si," or Victory Sky, Inc.

**Chen Submitted a Fraudulent ERAP Application for Residence #9 in Irvine, California**

35. On or about March 18, 2021, and on behalf of Victory Sky, Inc., Chen electronically submitted an application for ERAP funds relative to a person purportedly named "Sunny Lee" and allegedly living at a residence in Irvine, California ("Residence

#9"). The OCUW approved the application on or about May 6, 2021, and deposited $34,720.00 in ERAP funds to the BoA 9328 Account on or about June 22, 2021.

36. On or about April 8, 2022, investigators spoke with C.B., the true owner of Residence #9. C.B. told investigators that he had owned Residence #9 for several years and lived there with his family, including during the time period included in Chen's fraudulent ERA application. C.B. had never heard of either "Sunny Lee" or Victory Sky, Inc.

**Funds in the BoA 9328 Account Consist Entirely of Fraudulently Obtained ERAP Proceeds**

37. As reflected in paragraphs 12 to 36 above, the OCUW deposited into the BoA 9328 Account a total of $227,440.00 in ERAP funds as follows:

| Residence Number and Purported Tenant Name | Deposit Date | Deposit Amount |
|---|---|---|
| 1 - Yungtang Chen | May 6, 2021 | $19,200.00 |
| 2 - Xianqing Huang | May 17, 2021 | $24,960.00 |
| 3 - Yumei Huang | June 2, 2021 | $23,040.00 |
| 4 - Yongtong Zhu | June 8, 2021 | $25,760.00 |
| 5 - Kathy Tse | June 15, 2021 | $28,480.00 |
| 6 - Eva Taco | June 15, 2021 | $19,200.00 |
| 7 - Alice Chow | June 15, 2021 | $32,480.00 |
| 8 - Yongcheng Chen | June 22, 2021 | $19,600.00 |
| 9 - Sunny Lee | June 22, 2021 | $34,720.00 |
| Total | | $227,440.00 |

38. Accordingly, the defendant funds, which total the $215,566.31 the government was able to seize from BoA 9328, constitute fraud proceeds.

## CLAIM FOR RELIEF

39. Based on the above, plaintiff alleges that the defendant funds constitute or are derived from proceeds traceable to one or more violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A)

and 1961(1)(B). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant funds;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant funds to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: February 28, 2024

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

  /s/ James E. Dochterman
JAMES E. DOCHTERMAN
Assistant United States Attorney
Asset Forfeiture & Recovery Section

**VERIFICATION**

I, Jose Acosta-Martinez, hereby declare that:

1. I am a Special Agent with the U.S. Secret Service and the case agent for the forfeiture matter entitled *United States of America v. $215,566.31 Seized From One Bank of America Account*.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed February 27, 2024, in Santa Ana, California.

Jose Acosta-Martinez
Special Agent
U.S. Secret Service